IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| BELLSOUTH TELECOMMUNICATIONS, LLC d/b/a AT&T TENNESSEE, ) ) ) | |
| Plaintiff, ) | Case No. 3:16-CV-2509 |
| ) ) | |
| v. ) | Judge Sharp |
| ) | Magistrate Judge Holmes |
| THE METROPOLITAN GOVERNMENT ) OF NASHVILLE AND DAVIDSON ) COUNTY, TENNESSEE, et al., ) ) | |
| Defendants. ) | |

| | |
|---|---|
| COMCAST OF NASHVILLE I, LLC, ) ) | |
| Plaintiff, ) | Case No. 3:16-cv-2794 |
| ) | |
| v. ) | Judge Sharp |
| ) | Magistrate Judge Holmes |
| THE METROPOLITAN GOVERNMENT ) OF NASHVILLE AND DAVIDSON ) COUNTY, TENNESSEE, et al., ) ) ) | |
| Defendants. ) | |

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

In its motion for summary judgment, the Metropolitan Government of Nashville and Davidson County ("the Metropolitan Government" or "Metro") established that, as a matter of law, the Climb Once Ordinance, Metro Ord. No. BL2016-343 ("Ordinance" or "Climb Once"), is a valid exercise of Metro's municipal authority that neither conflicts with federal law nor impermissibly impairs private contract. Rather than responding to Metro's arguments, however, Plaintiffs' response simply refers the Court to their previous filings. (Doc. #84 at 1.) By failing to

{N0122726.3}     1

acknowledge—let alone carry—their burden to raise any issue of material fact that would prevent a grant of summary judgment for Metro, Plaintiffs only underscore the weakness of their position. In short, based on the undisputed facts, this Court should grant Metro's motion.

I. **PLAINTIFFS MISSTATE METRO'S SUMMARY JUDGMENT BURDEN.**

Plaintiffs first suggest that Metro's motion for summary judgment is inconsistent with Metro's argument that it should be permitted discovery to respond to Plaintiffs' summary judgment motions. (Doc. #58 at 29-30.)

Plaintiffs are wrong. As a matter of law, Metro has established that it is entitled to summary judgment; Metro has shown that the Climb Once Ordinance is not preempted by federal law or regulation because it does not conflict with federal law or regulation. (See Doc. #78 at 5-13.) Metro has shown that the Ordinance is a proper exercise of Metro's authority over the public rights-of-way and does not impinge on Nashville Electric Service's ("NES's") reserved powers. (See id. at 13-17.) And Metro has shown that Climb Once does not impair Plaintiffs' contracts with NES because the Ordinance does not prevent Plaintiffs or NES from meeting their obligations under those contracts. (See id. at 17-32.) These are legal arguments based on undisputed facts, and Metro does not need discovery to prevail on them.

Unlike Metro's summary judgment motion, however, Plaintiffs' motions for summary judgment depend substantially on disputed factual allegations. Thus, Plaintiffs claim that the Climb Once Ordinance will not ameliorate traffic concerns and will instead make them worse. (Doc. #50 at 28; Doc. #45 at 15.) This is a factual assertion which Metro disputes. Similarly, AT&T has also argued that there were reasonable alternatives to Climb Once, such as establishing permitting requirements, limit the times work may be performed, or establish safety standards or precautions that must be taken when work is performed. (Doc. #45 at 15.) Again, this is a factual assertion, and Metro disputes it. Metro cannot respond fully to these inherently

factual elements of Plaintiffs' motions for summary judgment without the opportunity to gather evidence and discovery from Plaintiffs, showing that Plaintiffs have the facts wrong. (See Doc. #58 at 29-30.)

Simply put, Plaintiffs misunderstand the different burdens that the parties face in resisting very different motions for summary judgment. To avoid a grant of Metro's properly fact-supported motion, Plaintiffs have the burden of producing specific evidence to establish a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). They have not done so, nor have they seriously even tried. On the other hand, Plaintiffs are not entitled to a grant of their motions for summary judgment—which rely on factual allegations couched as law but which are not actually supported by any evidence—unless they establish that undisputed facts support each element of each claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). There is no inconsistency between, on the one hand, Metro's position that it should be permitted discovery to show that the alleged "facts" on which Plaintiffs' motions are based are not merely disputed and unsupported but also wrong, and on the other hand, Metro's position that Plaintiffs have failed to counter Metro's properly fact-supported arguments entitling it to summary judgment. Id.

## II. THE CLIMB ONCE ORDINANCE IS A VALID EXERCISE OF METRO'S MUNICIPAL AUTHORITY OVER NASHVILLE'S STREETS AND SIDEWALKS.

Metro adopted the Climb Once Ordinance as a valid exercise of its municipal authority over Nashville's streets and sidewalks. Specifically, Metro enacted the Ordinance to reduce disruption to Metro's streets and sidewalks and to increase the safety of drivers and pedestrians when new communications providers seek to install new facilities over Metro Nashville's streets and sidewalks. See Metro. Ord. No. BL2016-343 at Preamble. Any impact the Ordinance may have on pole attachments is incidental to Metro's core purposes of improving safety and

reducing congestion in its rights-of-way. See Metro. Elec. Power Bd. v. Metro. Gov't of Nashville & Davidson Cty., 309 S.W.3d 474 at 477 (Tenn. Ct. App. 2008) (noting that Metro's authority "could be exercised in ways that could affect NES, such as building codes and traffic ordinances," without producing a conflict with NES's authority under the Metro Charter).

Plaintiffs have, throughout this litigation, incorrectly characterized the Ordinance as being fundamentally *about* regulating pole attachments. (See, e.g., Doc. #84 at 5; Doc. #50 at 3; Doc. #45 at 2-3.) Those arguments essentially ask this Court to discount and, indeed, to overlook Metro's authority to manage Metro Nashville's public rights-of-way for the safety of its residents and the efficiency of its vehicular and pedestrian traffic. But that authority is central to this case; the FCC defers to local rights-of-way management, see Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, 11 FCC Rcd. 15,499, 16,073 ¶ 1155 (1996); the Metro Charter likewise gives Metro the ultimate authority over the public rights-of-way, notwithstanding any limited delegation of authority to NES, see METRO CHARTER at Art. 2, §§ 2.01.23, 2.01.30, 2.01.40, 13.08.030; and the U.S. and Tennessee constitutions do not prohibit a local government from acting within the scope of its right-of-way authority in ways it deems reasonable and necessary to serve a public purpose, even if doing so affects private contracts (which the Climb Once Ordinance does not). See Energy Reserves Grp., Inc. v. Kansas Power & Light Co., 459 U.S. 400, 412 (1983).

By its terms, the Ordinance does not conflict with the FCC's pole attachment rules or Plaintiffs' contracts with NES, nor does it intrude upon those matters reserved to NES under the Charter. Again, because Plaintiffs have failed to point to any genuine issue of material fact, Metro is entitled to summary judgment.

### A. Climb Once Does Not Conflict, and Is Entirely Consistent, With Federal Pole Attachment Regulations.

The FCC did not intend its pole attachment timelines to supersede local authority over the public rights-of-way, and Plaintiffs have made no showing to the contrary. Nor have Plaintiffs shown that the FCC expected those timelines to apply to the placement of all new attachments. Nor could they: The FCC's rules provide that the Commission's make-ready construction deadlines apply *only* where the new attacher has paid an estimate of make-ready costs to the pole owner. 47 C.F.R. § 1.1420(e)(1); see also Implementation of Section 224 of the Act, 26 FCC Rcd. 5240, 5256 ¶ 29 (2011) ("2011 Pole Attachment Order") ("Upon receipt of payment from the attacher, we require a utility to notify immediately and in writing all known entities with existing attachments that may be affected by the planned make-ready.").

Plaintiffs ignore that language, and instead argue that the FCC struck a precise and universally applicable balance between the rights of new attachers and existing attachers— amounting to an implicit guarantee that existing attachers have at least 60 days to complete make-ready work. (Doc. #84 at 3 n.2.) But again, Plaintiffs flatly ignore the rules' relevant language, which states that the pole owner has the discretion to set a date for completion of make-ready construction, as long as that deadline is *no later than* 60 days after the pole owner sends notice, 47 C.F.R. § 1.1420(e)(1)(ii). Plaintiffs also ignore the FCC's discussion of the 60-day timeline in the implementing order. 2011 Pole Attachment Order ¶ 31-32. Specifically, the FCC itself suggested that a 60-day timeline was generous—and, indeed, might be *too* generous,

giving pole owners more time than necessary to ensure completion of make-ready work. See id.
¶ 32. The FCC expressly acknowledged that, in many cases, shorter timeframes would be possible and that stakeholders should strive to meet those shorter timeframes. Id.; see also id. ¶ 23 ("Although we establish this timeline as a maximum, we recognize that the necessary work can often proceed more rapidly . . . . It would not be reasonable behavior for a utility to take longer to fulfill any requests simply because a timeline with maximum timeframes is being adopted").

### B. Plaintiffs Misstate the Obligations Imposed on Pole Owners by the Climb Once Ordinance.

Contrary to Plaintiffs' arguments, nothing about the Climb Once Ordinance intrudes upon NES's areas of exclusive authority. The Ordinance imposes no obligations on NES that Metro is not authorized to impose by Metro's Charter. Rather, as set forth above, the Ordinance is a valid exercise of Metro's authority to manage Nashville's rights-of-way.

Plaintiffs' claim that Climb Once is inconsistent with authority granted to NES relies on a misreading of the Ordinance. Specifically, Plaintiffs assert that NES—and for that matter, any pole owner—is *required* to conduct post-construction inspections and follow-up on post-construction work following any use of Climb Once. That is untrue. As set out in the Ordinance, these actions are entirely voluntary for both pole owners and existing attachers. Metro. Ord. No. BL2016-343 at § 13.18.020(E) ("Upon receipt of the As-Built Reports, the Pre-Existing Third Party User and Owner may conduct a field inspection within sixty (60) days without waiving any rights."). The Climb Once ordinance obligates NES only to publish a list of approved contractors—and nothing more. (Doc. #78 at 16.)

Plaintiffs also argue that the Memorandum of Understanding between Metro and NES ("MOU") undermines Metro's claims of authority over public rights-of-way because the MOU

{N0122726.3}                                                    6

Case 3:16-cv-02509   Document 88   Filed 03/10/17   Page 6 of 11 PageID #: 1181

describes make-ready procedures to be used by Metro when accessing NES's poles. This argument turns logic on its head. The MOU adopts terms and conditions for Metro's access—*as an attacher*—to NES's poles, just as Plaintiffs' own pole attachment agreements with NES set forth their conditions of access. Nothing in the Climb Once Ordinance deprives NES of its authority to continue to negotiate such terms of access. The right to negotiate pole attachment agreements falls squarely within NES's power over the operation, construction, management, and maintenance of its electric plant. At the same time, nothing in the MOU—or in Article 42 of the Metro Charter—gives NES the ability to supersede Metro's authority over Nashville's streets and sidewalks. In fact, the MOU (again, like Plaintiffs' own pole attachment agreements) expressly recognizes that Metro retains its rights-of-way authority over any work performed in the public rights-of-way. (Doc. #78 at Ex. 2, MOU; Doc. #1-1, AT&T/NES Contract at Art. VI(B); Doc. #1-1 (Case No. 3:16-cv-2794), Comcast/NES Contract at Art. 12.1.)

In sum, Plaintiffs' reading of Article 42 of Metro's Charter would expand NES's exclusive authority well beyond the scope set forth in Article 42 of the Metro Charter. It would also strip Metro of its state-granted authority to regulate and maintain Nashville's streets and sidewalks. TENN. CODE. ANN. § 65-21-103; see also METRO CHARTER at Art. 2, §§ 2.01.23, 2.01.30, 2.01.40; see METRO CODE § 13.08.030 ("No person, firm or entity shall construct, install, operate and/or maintain an encroachment in, on, over, or under any street, road, alley, sidewalk or other public way except when permitted by the metropolitan government."). This Court should reject both Plaintiffs' over-expansive understanding of NES's authority, and their cramped understanding of Metro's authority.

    **C.**    **Plaintiffs Fail to Adduce any Evidence that Climb Once Conflicts with Their Contracts with NES.**

Plaintiffs' contractual impairment arguments fail at the threshold inquiry: whether the

Climb Once Ordinance actually abridges an existing contractual relationship at all. See Allied Structural Steel v. Spannaus, 438 U.S. 234, 242 (1978). This Court's inquiry must begin with the question of whether the provisions of the Ordinance actually conflict with Plaintiffs' contracts. And as Metro has shown, they do not. Climb Once permits new attachers to perform all make-ready construction in the public rights-of-way. Plaintiffs' agreements state that, *as between Plaintiffs and NES*, Plaintiffs will have the first opportunity to move their facilities. But those agreements do not represent a guarantee by NES that it will prevent any *third party* from moving Plaintiffs' facilities on NES's poles—nor, from a practical standpoint, could NES possibly offer such a guarantee.[1] In the absence of a contractual guarantee, Plaintiffs cannot succeed on their claims under the federal and state contract clauses, because there is no impairment of any kind. The Ordinance therefore does not substantially impair Plaintiffs' contracts with NES, and their claims under the Contract Clause fail as a matter of law.

Even if the Ordinance were construed to represent an impairment of Plaintiffs' contracts, Plaintiffs cannot claim they lacked notice that Metro might adopt regulations governing the use of municipal rights-of-way to make pole attachments. The Municipal Code, relevant case law, and Comcast's franchise with Metro each make clear that Metro retains ultimate authority over placement of attachments in the public right-of-way, regardless of the infrastructure on which those attachments are placed. As entities that rely on access to the public rights-of-way to deploy and operate their respective networks—and for whom the contours of that access have been established in the courts and by contract—Plaintiffs have long been well aware that Metro can at any time, pursuant to its municipal authority, impose new or different obligations related to rights-of-way access. See Tennessee v. United States, 256 F.2d 244, 258 (6th Cir. 1958); S. Bell

---

[1] NES did file a state court suit in which it stated that it could not practically comply with both its contracts and Climb Once. (Doc. #20-1.) But NES has since voluntarily dismissed that suit. Plaintiffs' continued reliance on that dismissed lawsuit as some kind of evidence of substantial impairment is misplaced.

{N0122726.3}  8

Tel. & Tel. Co. v. City of Nashville, 243 S.W.2d 617, 619 (Tenn. Ct. App. 1951); Franchise Agreement between Metro and Comcast of Nashville I, LLC at §§ 2.1, 2.4.[2]

Finally, Plaintiffs argue that the fact that Metro considered and rejected an alternative proposal undermines the validity of the Ordinance. (Doc. #84 at 8. But in fact, the opposite is true. That the Metro Council considered, but ultimately rejected, an alternative proposal in favor of the Ordinance reflects the Council's reasoned and considered conclusion that the Ordinance, as adopted, was the best means of achieving its goal of a safer and more efficient process by which to conduct make-ready construction in the public rights-of-way. Additionally, the only alternative proposal Plaintiffs point to would not accomplish the goals of Climb Once. That idea—which failed when it was first tried—only required the interested parties to come together to try to come to any agreement; nothing required an agreement to be accomplished. (Doc. #71 at ¶¶ 52-53.) There being no record evidence to the contrary, this Court should defer to the Metro Council's legislative judgment, see U.S. Trust Co. of N.Y. v. New Jersey, 431 U.S. 1, 21–22 (1977); City of El Paso v. Simmons, 379 U.S. 497, 508 (1965); Energy Reserves, 459 U.S. at 412, and find that any impairment of any contract that is the result of the Climb Once Ordinance is reasonable and necessary to achieve a legitimate public purpose.

## CONCLUSION

This Court should grant Metro's motion for summary judgment, and deny that of the Plaintiffs.

---

[2] Available at http://www.nashville.gov/Portals/0/SiteContent/ITS/docs/IT_Services/ComcastFranchiseAgreement2013.pdf.

{N0122726.3}  9

Respectfully Submitted,

THE DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
JON COOPER (#23571)
DIRECTOR OF LAW

<u>/s/R. Alex Dickerson</u>
Jeff Campbell (#22455)
R. Alex Dickerson (#27184)
Christopher M. Lackey (#26419)
Assistant Metropolitan Attorneys
P.O. Box 196300
Nashville, TN 37219
(615) 862-6341
*Counsel for the Metropolitan Government,
Mayor Megan Barry, and Mark Sturtevant*

## Certificate of Service

This is to certify that a copy of the foregoing has been forwarded via the court's ECF/CM system to:

| | |
|---|---|
| William L. Harbison<br>John L. Farringer IV<br>Sherrard Roe Voigt Harbison, PLC<br>150 3rd Avenue South, Suite 1100<br>Nashville, TN 37201<br>*Counsel for BellSouth Telecommunications, LLC* | Christian F. Binnig<br>Hans J. Germann<br>Mayer Brown LLP<br>71 S. Wacker Drive<br>Chicago, IL 60606<br>*Counsel for BellSouth Telecommunications, LLC* |
| Kevin T. Elkins<br>Robb S. Harvey<br>Waller, Lansden, Dortch & Davis, LLP<br>Nashville City Center<br>511 Union Street, Suite 2700<br>Nashville, TN 37219<br>*Counsel for Comcast of Nashville I, LLC* | Matthew A. Brill<br>Matthew T. Murchison<br>Melissa Arbus Sherry<br>Scott D. Gallisdorfer<br>Latham & Watkins LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, DC 20004-1304<br>*Counsel for Comcast of Nashville I, LLC* |

on this the 10th day of March, 2017.

/s/R. Alex Dickerson
R. Alex Dickerson